UNITED STATES BANKRUPTCY COURT   **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
               :
In re:            :
               :  Chapter 13
KERMAN J. MINBATIWALLA,   :  Case No. 09-15693 (MG)
               :
         Debtor.   :
               :
--------------------------------------------------------------x

### OPINION & ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF OF CLAIM # 2 PURSUANT TO FRBP 3001 WITHOUT PREJUDICE

*A P P E A R A N C E S:*

SHAEV & FLEISCHMAN
*Attorneys for the Debtor*
350 Fifth Avenue
Suite 7210
New York, NY 10118
By: David B. Shaev, Esq.

JEFFREY L. SAPIR
*Chapter 13 Trustee*
399 Knollwood Road
Suite 102
White Plains, NY 10603
By: Jody S. Kava, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

   Before the Court is debtor Kerman J. Minbatiwalla's ("Debtor") Objection to

Proof of Claim ("Claim") # 2, filed by J.P. Morgan Chase Bank, N.A. ("Chase") (the

"Objection"). (ECF # 15.) Debtor objects to the claim, alleging that Chase did not attach

any writing to the Claim demonstrating its interest in the property in violation of FED. R.

BANKR. P. 3001(c) and (d), and failed to include information required by Official

Bankruptcy Form B10.  The Debtor seeks to expunge Claim # 2, and to require Chase to

pay all reasonable legal fees and expenses incurred by his attorney.  For the reasons

explained below, the Court sustains the Debtor's Objection to Claim # 2 without

prejudice.  The proper creditor may file an amended proof of claim pursuant to 11 U.S.C.

§ 502(j) within 21 days of the entry of this order.  If Chase holds the note and mortgage,

it must affix documents to the proof of claim establishing that relationship.  Alternatively,

if Chase is not the holder, it must give the holder notice of this 21-day deadline and file a

declaration with the Court that such notice has been given.  The Debtor has 14 days after

any amended proof of claim is filed to object.  The Court denies Debtor's request for

legal fees and expenses.

## BACKGROUND

The Debtor filed a voluntary chapter 13 petition on September 22, 2009.

("Petition," ECF # 1.)  The Debtor is the joint owner of a condominium located at 300

East 93rd Street, Apt. 35 B-C, New York, NY 10128 ("the Property").  In his proposed

Amended Chapter 13 plan ("Amended Plan"), filed on November 13, 2009, which has

not been confirmed, the Debtor requested "Loss Mitigation" on the Property pursuant to

this District's Guidelines.[1]  (ECF # 12.)  The Amended Plan was served on all creditors,

including several Chase entities.  No Chase entity filed an objection to the request for

Loss Mitigation, but the Debtor's counsel never submitted a proposed order that would

---

[1]        The U.S. Bankruptcy Court for the Southern District of New York adopted a Loss Mitigation
Program "to function as a forum for debtors and lenders to reach consensual resolution whenever a debtor's
residential property is at risk of foreclosure.  The Loss Mitigation Program aims to facilitate resolution by
opening lines of communication between the debtors' and lenders' decision-makers."  *See Loss Mitigation
Program Procedures* ("Procedures"), Section I, Purpose, at 1; Instructions for Commencement of Loss
Mitigation, at 1.  (The Procedures, Commencement Instructions, and related documents can be found on the
Court's website at www.nysb.uscourts.gov in the section for Forms, Loss Mitigation.)  In this case, Loss
Mitigation was requested by checking the included box in the Model Chapter 13 Plan, which can also be
found in the Forms section of the Court website.

have formally commenced a Loss Mitigation Period.[2]  The Debtor's Schedule A lists the

value of the Property as $1,050,000.  (ECF # 1.)

According to the Debtor's Schedule D, the Property is subject to two liens, held

by "Chase Mortgage" ($832,319.13) and "Chase Home Equity Line of Credit"

($177,932.94), linked to account numbers 1704021981 and 00429228620649,

respectively.  The original Schedule D did not indicate whether these loans were

"unliquidated," "contingent" or "disputed," but on November 13, 2009, Debtor amended

his Schedule D to list the Chase Mortgage and the Chase Home Equity Line of Credit

claims as "disputed."  (ECF # 13.)  Debtor's Amended Plan, filed on the same day, lists

"Chase Line of Credit" and "Chase Mortgage" as the Secured Creditors to whom

arrearages,"as per loss mitigation," are owed.  The Debtor's original proposed Plan listed

the same secured creditors holding claims against the Property, with no arrearages owed

and amounts to be paid "per contract."  (ECF ## 5, 12.)  Debtor's Form 22C, Chapter 13

Statement of Current Monthly and Disposable Income, listed creditors holding secured

claims against the Property as "Chase" and "Chase Mortgage."  (ECF # 2.)

On December 3, 2009, Chase Home Finance, LLC, as servicer for U.S. Bank

National Association, as Trustee, successor in interest to Wachovia Bank National

Association, as Trustee for GSR Mortgage Loan Trust 2005-6F ("Chase Home Finance,

LLC"), filed a proof of claim in the amount of  $842,098.03, including prepetition

arrears, secured by the Property (Claim # 8).  Claim # 8 includes:  (1) two pages of a

Recording and Endorsement Cover Page (between Debtor, the joint owner of the

---

[2]      Chase had twenty-one (21) days to object to Loss Mitigation, but it did not do so.  The Instructions
for Commencement of Loss Mitigation provide that "[i]f no objection is filed, the debtor shall submit an
order as soon as possible."  The order, when entered by the Court, then formally commences the Loss
Mitigation Period, imposing a time table and obligations on both a debtor and lender.  Because no proposed
order was submitted by Debtor's counsel in this case, the Loss Mitigation Period never commenced.

Property, and JP Morgan Chase Bank); and (2) a Consolidation, Extension, and

Modification Agreement between Debtor, the joint owner, and JP Morgan Chase Bank,

with various exhibits, including (i) the consolidated Note and Mortgage, in favor of

JPMorgan Chase Bank, N.A. (collectively, the "Consolidated Mortgage and Note"), in

the amount of $907,500, (ii) the underlying Washington Mutual mortgages which were

consolidated into the Consolidated Mortgage, and (iii) an affidavit from the Federal

Deposit Insurance Corp. ("FDIC") contending that JP Morgan Chase Bank, pursuant to a

certain "Purchase and Assumption Agreement," acquired all loans and loan contributions

from Washington Mutual.[3]

JP Morgan Chase Bank N.A. filed Claim # 2 on October 19, 2009, asserting a

secured claim in the amount of $178,257.72, including prepetition arrears of $123.45,

against the Property.  Claim # 2 consists of two documents:  Official Form 10, and a two-

page itemized statement entitled "Exhibit A."  Official Form 10, signed by Gary D.

Crockett, indicates that the claim is for a loan secured by real estate in the amount of

$178,257.72, including $123.45 in arrears, plus interest or other charges.  Exhibit A lists

the case number, the name of the Debtor, the last three digits of the "Loan Number," and

a summary list of the principal, interest, and late charges.  The summary breaks down the

claim into $177,432.94 owed on the principal, $701.33 in interest, and a $123.45

---

[3]     Chase Home Finance, LLC is not listed as the Lender in any of the documents attached to Claim # 8.  Except where Washington Mutual is identified as the Lender, the Lender is consistently listed as "J.P. Morgan Chase Bank, N.A."  On November 30, 2009, Chase Home Finance, LLC filed an objection to confirmation of Debtor's Amended Plan, contending that the Debtor's Amended Plan fails to provide for prepetition arrears due to Chase Home Finance, LLC; it fails to provide for payment of post-petition mortgage payments, and it improperly subjects the lien of Chase Home Finance, LLC to valuation under 11 U.S.C. § 506(a). (ECF #16.)  On December 1, 2009, Debtor responded by letter, contending that "[a]n inspection of the claims register fails to reveal any proof of claim filed on behalf of Chase Home Loan, LLC," and requests documentation concerning standing to object to the Amended Plan.  (ECF # 17.)  As noted *supra*, Claim # 8 was filed two days later, on December 3, 2009.  As Debtor has not filed an objection to Claim #8, the Court will not address the validity of Claim # 8 in this Opinion and Order.

arrearage claim.  The addresses for disbursements and correspondence shown on Claim # 2 are different from the addresses listed on the Debtor's (original and amended) Schedule D.  The "Loan Number" listed on Exhibit A to Claim # 2, "XXXXXXXX 649," corresponds to the last three digits and the number of characters in the "Account Number" on the Debtor's (original and amended) Schedule D (00429228620649), removing the two leading zeros.

On October 22, 2009, Debtor's counsel requested documentation from Chase supporting Claim # 2.  (*See* ECF # 15.)  In the letter, counsel indicated that Chase only attached "Exhibit A" to the claim, showing a summary, arrearage and post-petition chart.  (*Id.*)  In addition, Debtor's counsel requested that (a) Chase forward any missing pages from the Claim, and (b) advise which entity currently holds the note and mortgage and whether or not there have been any assignments.  (*Id.*)  According to the Debtor, Chase has not responded to the request.  On November 24, 2009, Debtor objected to Claim # 2.  (ECF # 15.)  Chase has not responded to the Objection.  On January 14, 2010, the Court held a hearing on Debtor's Objection to Claim # 2.  No attorney for Chase appeared at the hearing.

## DISCUSSION

### A.        Standing to File a Proof of Claim

To file a proof of claim, a claimant must be a "creditor or the creditor's authorized agent."  Fed. R. Bankr. P. 3001(b).  A "creditor" is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  A claim is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."  11

U.S.C. § 101(5)(A) and (B).  "[A] claim or interest, proof of which is filed under section

501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. §

502(a).

"[The] Bankruptcy Code and Fed. R. Civ. P. 17 each have liberal standing

provisions, designed to allow a party to appear as long as it has a direct stake in the

litigation under the particular circumstances."  *In re Conde-Donato*, 391 B.R. 247, 250

(Bank. E.D.N.Y. 2008) (internal quotation marks omitted).  "A servicer of a mortgage is

clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its

duties as a servicer."  *Id*. at 250 (citing *In re Viencek*, 273 B.R. 354, 359 (Bankr.

N.D.N.Y. 2002); *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002); *Bankers Trust

(Delaware) v. 236 Beltway Inv.*, 865 F. Supp. 1186, 1191 (E.D. Va. 1994); *In re Tainan*,

48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (determining that mortgage servicer was a party

in interest for purposes of a relief from stay proceeding)).  In *Conde-Donato*, the court

determined that where the loan servicer "provided an affidavit attesting that it is the

servicer of the note and mortgage, has provided the original note and mortgage, was

listed on the Debtor's Schedules as having a claim against the estate, and was provided

for in the Debtor's Chapter 13 Plan," and where "[t]he Debtor d[id] not dispute that

[servicer was] the servicer . . . it [was] clear that [servicer] is the servicer of the note and

mortgage and it ha[d] standing to file a proof of claim against the Debtor."  *Conde-

Donato*, 391 B.R. at 250.

An assignee of a note and mortgage also has standing to file a proof of claim.  *Id.*

at 251.  In New York State, assignments can be effected solely by the transfer of the

relevant note and mortgage.  *See* N.Y. REAL PROPERTY LAW § 244 ("A grant takes effect,

so as to vest the estate or interest intended to be conveyed, only from its delivery; and all

the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter

executed."); *see also Deutsche Bank Nat'l Trust Co. v. McRae*, No. 36701 (TJW), 2010

WL 309015 at *2 (N.Y. Sup. Jan. 25, 2010) (citing *Fryer v. Rockefeller*, 63 N.Y. 265

(1875); *Curtis v. Moore*, 152 N.Y. 159 (1897); N.Y. JUR. 2D MORTGAGES AND DEEDS OF

TRUST § 272 (2009) ("A mortgage can be assigned in two ways—by delivery of the bond

and mortgage by the assignor to the assignee with the intention that all ownership

interests thereby transferred, or by a written instrument of assignment.")).  Thus, an

assignee can demonstrate standing by attaching the note and the mortgage to a Proof of

Claim; it does not need to attach a written assignment to the proof of claim.  *Conde-*

*Dedonato*, 391 B.R. at 251 ("Thus, a mortgage and note can be transferred by delivery,

and do not have to be evidenced by a written assignment.").

Courts require an Affidavit from someone with personal knowledge establishing

facts supporting standing, or possession of the original note and mortgage to establish

standing in a state court foreclosure action and in a motion to lift the automatic stay in

bankruptcy court under 11 U.S.C. § 362(d).  *See Mortgage Elec. Registration Sys., Inc. v.*

*Coakley*, 41 A.D.3d 674 (N.Y. App. Div. 2d Dep't 2007) (applying UCC 3-104 and 3-

204 analysis to find that transfer of promissory note was sufficient to establish plaintiff as

lawful holder of note); *HSBC Bank USA, N.A. v. Cherry*, 18 Misc.3d 1102(A), at *2-3

(N.Y. Sup. Ct., Kings Cty 2008) (requiring multiple affidavits and a valid power of

attorney from alleged assignee to demonstrate standing); *In re Hayes*, 393 B.R. 259, 267-

68 (Bankr. D. Mass. 2008) (requiring affidavit regarding standing under Massachusetts

state law).  Specifically, in *Cherry*, the court required the alleged assignee to submit an

affidavit from an officer or a valid power of attorney in order to answer the court's
inquiries with respect to: (1) the assignment of the instant nonperforming mortgage loan
from the original lender to the plaintiff; (2) the employment history of the individual,
who allegedly assigned the mortgage to the plaintiff and then swore to be the plaintiff's
servicing agent; and (3) the relationship between the plaintiff, the servicing agent for the
indenture trustee allegedly holding the mortgage, and Deutsche Bank and Goldman
Sachs, which, the court noted from its knowledge in other cases, all "seem[ed] to share
office space." *Cherry*, 18 Misc.3d 1102(A), at *2-3.

Similarly, in *In re Hayes*, the court found that an alleged trustee of an entity
apparently related to an alleged assignee of a note and mortgage had no standing to lift
the automatic stay. *Hayes*, 393 B.R. at 268. There, the original mortgagee on a mortgage
and note for certain property ("Property") was Argent Mortgage Company, LLC
("Argent"). *Id.* at 262. AMC Mortgage Services, Inc. ("AMC"), as alleged servicer for
Argent, filed a proof of claim concerning a lien on the Property. Deutsche Bank National
Trust Company ("Deutsche Bank"), as alleged Trustee of Argent Mortgage Securities,
Inc., under a Pooling and Servicing Agreement ("PSA"), filed a motion to lift the
automatic stay with respect to the Property. *Id.* at 261. The debtor objected to both
AMC's proof of claim and Deutsche Bank's motion to lift the automatic stay, challenging
Deutsche Bank's standing, and noting the absence of evidence of an assignment to AMC
from Argent. *Id.* at 263. At trial, Deutsche Bank, through a Citi Residential Lending,
Inc. ("Citi") bankruptcy specialist, who testified that Citi was the current servicer of the
mortgage, introduced (1) a "Confirmatory Corporation Assignment of Deed of Trust
Mortgage," pursuant to which Argent, by Citi (its "attorney-in-fact"), purported to assign

and transfer the mortgage to Deutsche Bank as Trustee of Argent Mortgage Securities, Inc., dated seven months after the filing of the lift stay motion ("Assignment"); (2) a "Limited Power of Attorney" given by Argent to Citi, including the power to assign any Mortgage and the related Mortgage Note; (3) the PSA between Argent Securities, Inc., Ameriquest Mortgage Co. ("Ameriquest") and Deutsche Bank, as Trustee, in which Argent was identified as an "Originator." *Id.* at 263-66. The Citi bankruptcy specialist also testified that Argent and Ameriquest were affiliated companies, that Ameriquest created AMC to service loans and that Citi purchased AMC's loan servicing portfolio. *Id.* at 266. Despite this body of evidence, the court denied Deutsche Bank standing to lift the automatic stay because it failed to prove that the mortgage was assigned from Argent to Argent Mortgage Securities, Inc. *Id.* at 268. In addition, the court found the Assignment ineffective to convey standing on Deutsche Bank because Citi lacked authority to assign the mortgage to Deutsche Bank under the PSA. *Id.* Furthermore, it found that Deutsche Bank failed to submit any evidence that the mortgage was included in the PSA. *Id.* The court also found that "the Debtor's reference to Deutsche Bank as a secured creditor in several of her proposed Chapter 13 plans cannot confer standing on it as a party in interest for purposes of its Motion for Relief from Stay." *Id.* at 268 (citing *In re Newcare Health Corp.*, 244 B.R. 167, 170 (1st Cir. B.A.P. 2000) ("a defect in standing cannot be waived")). Lastly, the court denied Deutsche Bank standing to defend the Debtor's objection to AMC's proof of claim, and sustained the objection without prejudice to reconsideration under 11 U.S.C. § 502(j) upon the filing of an amended proof of claim by the proper party. *Id.* at 270.

These principles apply with equal force here. Chase has the burden of establishing its standing. Claim # 2 does not attach evidence establishing Chase's standing as loan servicer or as the holder of the note and mortgage. Whatever its reasons, Chase ignored the written requests from Debtor's counsel for evidence of its standing, and did not respond to the Debtor's Objection to Claim # 2. Therefore, Chase has failed to present evidence necessary to demonstrate that it is either the servicer, note and mortgage holder, or assignee such that it has standing to bring Claim # 2.

### B.      Evidence Required to Support Proofs of Claim

Nor has Chase has met its evidentiary burden under the Bankruptcy Code and Rules  to substantiate its proof of claim. Unless a proof of claim is properly executed and filed in accordance with the rules, the proof of claim does not constitute *prima facie* evidence of the validity and amount of the claim. *See* FED. R. BANKR. P. 3001(f).

### 1.   Burden of Proof for Claims

"To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) (citing *In re Allegheny Int'l, Inc.,* 954 F.2d 167 (3d Cir.1992); *In re Giordano,* 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)). Specifically, a proof of claim in a bankruptcy proceeding "cannot be defeated by mere formal objection and the sworn proof is to be treated as some evidence even when it is denied." *In re Sabre  Shipping Corp.*, 299 F. Supp. 97, 99 (S.D.N.Y. 1969). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of

the merits of the validity and the amount of the claim."  4 COLLIER ON BANKRUPTCY

502.03[3][f] (rev. ed. 2007).

Rule 3001 requires a claimant to attach supporting documentation to a proof of

claim.  Rule 3001(c) provides that "[w]hen a claim, or an interest in property of the

debtor securing the claim, is based on a writing, the original or a duplicate shall be filed

with the proof of claim.  If the writing has been lost or destroyed, a statement of the

circumstances of the loss or destruction shall be filed with the claim."  FED. R. BANKR. P.

3001(c).  Rule 3001(d) provides that "[i]f a security interest in property of the debtor is

claimed, the proof of claim shall be accompanied by evidence that the security interest

has been perfected."  FED. R. BANKR. P. 3001(d).  In addition, Item 7 on Official

Bankruptcy Form B10, sets forth the content and format for proofs of claim, and

instructs creditors as follows:

> Attach redacted copies of any documents that support the claim,
> such as promissory notes, purchase orders, invoices, itemized
> statements of running accounts, contracts, judgments, mortgages,
> and security agreements.  You may also attach a summary.  Attach
> redacted copies of documents providing evidence of perfection of a
> security interest.  You may also attach a summary.

Failure to attach the documentation required by Rule 3001 will result in the loss of

the *prima facie* validity of the claim. *In re Lundberg*, No. 02-34542 (LMW), 2008 WL

4829846, at *2 (Bankr. D. Conn. 2008) ("If the claimant fails to allege facts in the proof

of claim that are sufficient to support the claim, *e.g.,* by failing to attach sufficient

documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is . . . deprived of

any *prima facie* validity which it could otherwise have obtained."); *see also In re Hight*,

393 B.R. 484, 493 (Bankr. S.D. Tex. 2008) ("[F]ailure to comply with Rule 3001(c)

merely renders a claim to not constitute 'prima facie evidence of the validity and amount

of the claim.'") (internal citation omitted).  However, failure to attach the required

documentation does not automatically render the claim invalid.  *Id*. at 493 ("[W]hile the

Objection to Claim properly states that failure to comply with Rule 3001(c) is

'improper,' the Court notes that such a failure does not automatically render a claim

invalid.").

### 2.  Level of Documentation Required of Creditor for Prima Facie Validity of a Claim

The level of documentation required to establish the *prima facie* validity of a

claim which purportedly has been assigned is the subject of much jurisprudence.  State

law principles and the Uniform Commercial Code ("UCC") govern what is required to

effectuate an assignment.[4]  Significantly more cases interpret the requirements for claims

associated with credit card receivables and promissory notes as opposed to secured

mortgage claims.  While courts have typically imposed more stringent requirements for

documentation to support mortgage claims than for unsecured claims, the jurisprudence

---

[4]        State law differs for perfecting interests in real and personal property.  In the assignment context, courts have applied Article 3 of the UCC with respect to the assignment of promissory notes associated with mortgages.  Courts appear to differ whether possession of the note is sufficient under UCC Article 3 for the holder to enforce a mortgage note.  For example, in *In re Wells*, the court applied UCC § 3-204 and § 3-201 and found that a claimant did not have standing because "possession alone does not establish that the party [in possession of a mortgage note] is entitled to receive payments under it."  *In re Wells*, 407 B.R. 873, 879 (Bankr. N.D. Ohio 2009) (internal quotation marks omitted).  However, New York State courts and other bankruptcy courts have applied Article 3 of the UCC to the assignment of promissory notes associated with mortgages in foreclosure actions, and have found that a claimant has standing if it is in possession of the relevant mortgage note.  *See Coakley*, 41 A.D.3d at 674  (applying UCC § 3-104 and § 3-204 analysis to find that transfer of promissory note was sufficient to establish plaintiff as lawful holder of note with standing to prosecute foreclosure action); *In re Samuels*, 415 B.R. 8, 20 (Bankr. D. Mass 2009) ("As a negotiable instrument, the Note may be transferred in accordance with Article 3 of the Uniform Commercial Code as enacted in Massachusetts. . . .  By virtue of its possession of a note indorsed in blank, [claimant] is the holder of the note and as such has standing in this case to seek payment thereof.") (internal citations omitted).  The *Samuels* court determined that under Massachusetts law, in order to be valid, the assignment of the mortgage needed to be in writing.  As noted *supra*, under New York State law, possession of the mortgage note is sufficient for standing.  Notably, courts in other jurisdictions, applying state law in other contexts, have found that "Article 9 of the UCC does not apply to the creation or transfer of a security interest in real property."  *E.g., Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) (finding that individual could not bring claim "that the lender defendants violated Article 9 of the UCC because they failed to acquire a UCC-1 lien on his property").

involving non-mortgage claims is illustrative of the variety of judicial approaches to deal

with these problems from which this Court takes guidance.[5]

> ### a. Level of Documentation Required to Support Prima Facie Validity of a Mortgagee's Claim Where There Has Been an Assignment or A Servicing Arrangement

Courts are divided about documentation required to be attached to a proof of

claim for a secured claim based on a mortgage to establish a *prima facie* case.

Bankruptcy courts generally require (in accordance with FED. R. BANKR. P. 3001(d))

evidence that the security interest has been perfected, but do not specify what that

evidence should be.  *See, e.g.*, *In re Parrish*, 326 B.R. 708, 718-19 (Bankr. N.D. Ohio

2005); *In re Long*, 353 B.R. 1, 13-14 (Bankr. D. Mass. 2006).  They generally require

that the claimant attach a copy of the promissory note and the mortgage, or, at least, an

explanation as to why the note is not provided.  *Parrish*, 326 B.R. at 718-19; *Long*, 353

B.R. at 13-14.

Where there is an assignment, some courts additionally require the claimant to

attach all writings on which the alleged assignment is based, including any modification

agreements and assignments.  *Long*, 353 B.R. at 13-14.  Other courts similarly require

evidence of the entire chain of custody of the mortgage and note.  The claimant must

prove initially "that it is the creditor to whom the debt is owed or, alternatively, that it is

the authorized agent of the creditor."  *Parrish*, 326 B.R. at 719.  In sustaining the debtor's

objection to a mortgage claim, the *Parrish* court noted:

> The relationships between and among these entities may be
> understood internally by [alleged assignee], but it is the claimant's

---

[5]    As at least one court has noted, "[n]o doubt, the historical recovery experienced by unsecured creditors in consumer bankruptcy cases is so minimal that the expense of employing counsel to defend objections to their claims is not practical."  *In re Pritchett*, 06-40077-JJR-13, 2006 WL 3103161, at *2 (Bankr. N.D. Ala. 2006).

burden to bring that information to the court.  If the claimant is the
original lender, the claimant can meet its burden by introducing
evidence as to the original loan.  If the claimant acquired the note
and mortgage from the original lender or from another party who
acquired it from the original lender, the claimant can meet its
burden through evidence that traces the loan from the original
lender to the claimant.  A claimant who is a servicer must, in
addition to establishing the rights of the holder, identify itself as an
authorized agent for the holder.  Here, [alleged assignee] might be
the current holder of the debtor's note and/or mortgage or it might
be the servicer for whoever the holder is, but it failed to prove
either relationship."

*Id.* at 720-21.

### b.  Level of Documentation Required for Prima Facie Validity of Credit Card Receivables

In the context of objections to claims based on credit card receivables, bankruptcy

courts are split on the documentation required of an assignee to establish a *prima facie*

case where the claimant is not the original holder of a debt.[6]  While, as noted above, the

potential bankruptcy recoveries on credit card receivables are often minimal, thus giving

claimants less incentives to defend their proofs of claim, and the debt is unsecured, the

documentation required to substantiate a creditor's rights as assignee in both the credit

card and mortgage context, is similar, as Article 3 of the UCC arguably applies in both

contexts at least with respect to the promissory notes associated with mortgages.

---

[6]      A proposed amendment to Rule 3001 would require additional documentation to support a claim
based on credit card receivables:  "When a claim is based on an open-end or revolving consumer credit
agreement, the last account statement sent to the debtor prior to the filing of the petition shall also be filed
with the proof of claim."  FED. R. BANKR. P. 3001(c)(1) (proposed August 2009).  The Advisory
Committee Note explains:  "Subdivision (c).  Subdivision (c) is amended to prescribe with greater
specificity the supporting information required to accompany certain proofs of claim and, in cases in which
the debtor is an individual, the consequences of failing to provide the required information.
Existing subdivision (c) is redesignated as (c)(1).  It is amended to require that a proof of claim based on an
open-end or revolving consumer credit agreement (such as an agreement underlying the issuance of a credit
card) be accompanied by the last account statement sent to the debtor prior to the filing of the bankruptcy
petition.  This requirement applies whether the statement was sent by the entity filing the proof of claim or
by a prior holder of the claim."
*See* http://www.uscourts.gov/rules/proposed0809/BK_Rules_Forms_Amendments.pdf.

Accordingly, the development of the case law for such claims is instructive in considering the issues raised here.

The range of documentation required by courts to be attached to proofs of claim to support the assignment of a credit card debt varies from summaries of the amount of debt owed (with the requirement that the creditor make available to the debtor additional documentation), to a signed copy of a written assignment specifically referring to the debtor's account from the original holder of the debt to the purported assignee. *E.g.*, *In re Kendall*, 380 B.R. 37, 47 n.10 (Bankr. N.D. Okla. 2007); *In re Porter*, 374 B.R. 471, 481 (Bankr. D. Conn. 2007); *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004). Some courts specify what documents are to be attached; other courts merely require that creditors submit some documentation to prove they are the owner of a debt. *In re Kincaid*, 388 B.R. 610, 616 (Bankr. E.D. Pa. 2008) ("By demanding the identification of the owner of a claim to ensure that Debtor has an obligation to pay that creditor and, in exchange, will receive a discharge of its debt, Debtor is not seeking to challenge the transfer but merely to confirm that one has taken place.") (internal citations omitted).

Courts taking a stricter approach require the claimant to attach a signed copy of an assignment to the proof of claim in order to constitute evidence of the validity and the amount of the claim. *See, e.g. In re Hughes*, 313 B.R. at 212. Where there is an alleged blanket assignment of multiple receivables, courts take different approaches to what is required to establish *prima facie* evidence of the assignment. For example, in *Hughes*, where the debt was purportedly assigned by a blanket agreement, the court found that the proof of claim must be accompanied by sufficient information to identify the debtor's account, such as the account number and account balance; however, the assignment did

not have to contain a specific reference to the debtor's account. *Id.* In *In re Rochester*, No. 03-32184-BJH-13, 2005 WL 3670877, *5-6 (Bankr. N.D. Tex. May 24, 2005), the court agreed with the *In re Hughes* court that an alleged assignee could make a *prima facie* case by attaching a blanket assignment identifying an assignor that is not listed as a creditor on the debtors' schedules to its proof of claim, <u>and</u> submitting additional documents linking the two different entities. In addition, the *Rochester* court found that attaching a blanket assignment identifying an assigning party that is listed as a creditor on the debtors' schedules would also be sufficient to establish the *prima facie* validity of the claim. *Id.* Other courts take an even stricter approach, finding that a blanket assignee can establish a *prima facie* case only where the assignment specifically identifies which accounts were assigned. *E.g.*, *Kendall*, 380 B.R. at 47 n.10 (disagreeing with *In re Hughes* and concluding that "submission of an assignment of numerous accounts that fails to identify which accounts were assigned is not sufficient evidence of the assignment of any particular account").

On the other hand, in *In re Relford*, 323 B.R. 669, 681 (Bankr. S.D. Ind. 2004), the court refused to deny *prima facie* validity to a claim where the claimant attached a bill of sale as evidence of a purported assignment, even though the bill of sale did not establish that the debtor's claim was actually included in the assignment or that there was a contractual relationship between the "Sellers" of the claim and the original claimant, and the purported assignee provided no additional documents in support of the assignment. In so deciding, the court looked to FED. R. BANKR. P. 3001(e), which applies to Transferred Claims, and the Advisory Committee notes to the 1991 amendments to Rule 3001, which provide that subdivision (e) was "amended to limit the court's role to

the adjudication of disputes regarding transfers of claim.  If a claim has been transferred

prior to the filing of a proof of claim, there is no need to state the consideration for the

transfer or other evidence of the transfer." *Relford*, 323 B.R. at 681.

Judge Weil in *In re Porter*, 374 B.R. at 481, took a more moderate approach,

requiring that "when the creditor is an account assignee, the proof of claim also must

specify either the original account number (and original account creditor) or an account

number (and creditor) to which the debtor directed at least one prepetition payment." *Id.*

at 481.  Furthermore, a creditor could establish a *prima facie* case through the use of

summaries so long as the creditor makes "the underlying documents available for

examination at a reasonable place and time." *Id.* (citing *In re Cluff*, 313 B.R. 323, 335-36

(Bankr. D. Utah 2004); FED. R. EVID. 1006 ("The contents of voluminous writings . . .

may be presented in the form of a . . .  summary. . . .  The originals, or duplicates, shall be

made available for examination or copying, or both, by other parties at [a] reasonable

time and place . . . .")).  The *Porter* court, recognizing that "conclusions reached [by

other courts] [we]re not entirely in harmony," found that the summary does not need to

be a business record, but must "contain[ ] the debtor's name, account number, the

prepetition account balance, interest rate, and a breakdown of the interest charges,

finance charges and other fees . . . that make up the balance of the debt, or attach enough

monthly statements so that this information can be easily determined." *Porter*, 374 B.R.

at 481 (citing *In re Armstrong*, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005)).

However, if the creditor wishes its claim to survive an objection, the *Porter* court

found that its obligations do not end at providing an account summary. *Id.* at 482-83.

The court found that before an objector could object to a proof of claim accompanied by

17

an "account summary sufficient to raise [the presumption of *prima facie* validity as an

initial matter]," "an objector must request a documentation review" to "test" the

adequacy of the documentation behind the summary.  *Id*.  Failure of the creditor to

respond to requests for documentation within two weeks after dispatch or

communication of such request could strip any presumption of *prima facie* validity from

the proof of claim and the objection could be sustained after a hearing on notice.  *Id.* at

483.  I have applied this standard in considering objections to claims arising from credit

card receivables.[7]

### 3.  Role of Debtor's Schedules

Even where the creditor fails to attach sufficient documentation to its proof of

claim, where the debtor schedules a claim that is substantially similar to the claim at

issue by the purported assignee, courts diverge on the effect on the validity of the claim.

Most of the jurisprudence on this point is in the credit card context.  Some courts find

that where the debtor schedules the claim as undisputed, but then objects to the claim, the

court will take judicial notice of the debtor's schedules, and the burden of proof shifts to

the debtor to refute the claim even if the claim otherwise lacks *prima facie* validity for

lack of sufficient documentation.  *See In re Jorczak*, 314 B.R. 474, 483 n.11 (Bankr. D.

---

[7]    The Court respectfully disagrees with the courts that find the creditor's signature sufficient alone
to establish *prima facie* validity of a claim for the same reasons given by the court in *In re DePugh*, 409
B.R. 125, 135 n.7 (Bankr. S.D. Tex. 2009) ("Some courts have suggested that even if a creditor's proof of
claim fails to comply with Bankruptcy Rule 3001, the debtor's objection must still produce some evidence
which tends to meet, overcome, or at least equalize the statements on the proof of claim.  These courts
essentially reason that because a proof of claim is signed under penalty of up to $500,000.00 or five years
in prison, even a skeletal proof of claim should be afforded some sort of evidentiary weight.  Based on this
reasoning, these courts posit that a debtor's objection to even a bare-bones proof of claim should be
accompanied by some evidence, such as a sworn affidavit.  This reasoning fails to account for the fact that
a debtor is also subject to severe penalties for making false factual statements or frivolous allegations in a
claim objection–or in his schedules.  Because both creditors and debtors are subject to reprimand for
making false statements with respect to claims, the notion that a deficient proof of claim should be afforded
some evidentiary weight, but a claim objection without accompanying affidavits should not, rings hollow.")
(internal quotation marks and citations omitted).

Conn. 2004) ("[W]hen a 'proof of claim' [against an estate surplus] has been filed in a chapter 7 case and the chapter 7 debtor objects to the same but scheduled the relevant claim as undisputed, the burden is on the debtor to offer some adequate level of explanation as to why his scheduling of that claim as undisputed was incorrect.") (credit card claim); *In re Cluff*, 313 B.R. at 340 (debtor seeking to amend schedules was "disingenuous," "smacks of manipulation," and raised "issues of bad faith") (credit card claim). Other courts have used the debtor's acknowledgment in schedules or otherwise that a lien exists against the property to sustain a lack of sufficient documentation objection, but to permit the filing of new proofs of claim. *Parrish*, 326 B.R. at 718-19 (mortgage claim). Another group of courts find that because the debtor can amend his/her schedules at any time, a change in the listing of the claim from "undisputed" to "disputed" has no effect on the burden associated with the claim, and the courts will not rely on such admissions. *See In re Heath*, 331 B.R. 424, 431 (9th Cir. B.A.P. 2005) (internal citations omitted).

For example, the court in *In re Kincaid* indicated that while a creditor is required to provide documentation, it ultimately allowed the claim in reliance on the debtor's schedules, holding that judicial notice of the schedules as evidence of a claim is sufficient proof where the schedules "are consistent with the amount set forth in the deficient claim and do not indicate that the debt is 'disputed,' 'unliquidated' or 'contingent.'" *Kincaid*, 388 B.R. at 617 (citing *In re Jorczak*, 314 B.R. at 483; *In re Leverett*, 378 B.R. 793, 804 (Bankr. E.D. Tex. 2007); *In re Relford*, 323 B.R. at 676) (credit card claim). The court sought to reach a balance between "the debtor's right to be able to verify that the claimant is the owner [of the debt] and the claimant's right not to

19

be harassed with *pro forma* documentation objections that have no underlying basis . . .
." *Id.* at 617 n.7.

Using another approach, the *In re Parrish* court sustained a debtor's objection to
the proof of claim based on lack of sufficient documentation, but because the debtor
acknowledged the debt was owed to some entity, and presumed there was still a lien on
the real estate at issue, it gave the entity that filed a proof of claim "or whoever actually
holds or services the claim against the debtor," 20 days from the date of the order
sustaining the objection "to file a proof of claim calculated in accordance with the factual
findings made above." *Parrish*, 326 B.R. at 718-19.  The court directed that if the entity
that filed the proof of claim held the note and mortgage, it needed to affix documents to
the proof of claim establishing that relationship. *Id.* at 721-22.  Alternatively, if the
entity that filed the proof of claim was not the holder, it was "to give notice to the holder
of this [20 day] deadline and [wa]s to file a notice with the court that such notice has
been given." *Id.* at 722.  The debtor had 20 days after the proof of claim is filed to file
an objection to it, if any. *Id.*

In not relying on the debtor's schedules where the debtor initially scheduled a
claim as undisputed, and then changed the designation to disputed, the *In re Heath* court
acknowledged that bankruptcy schedules can constitute admissions under FED. R. EVID.
801(d)(2), but "amendments to bankruptcy schedules are permitted 'as a matter of
course' any time before a case is closed." *In re Heath*, 331 B.R. at 431 (citing *In re
Cluff*, 313 B.R. at 340; *Arnold v. Gill (In re Arnold),* 252 B.R. 778 (9th Cir. B.A.P.
2000); FED. R. BANKR. P. 1009(a)).  Still, the *Heath* court, though indicating it was not
relying on the debtor's schedules, distinguished a situation in which "debtor thinks, for

20

example, in accordance with her sworn statement in Schedule D . . . that she owes [less

than proof of claim as filed]," where the proper objection would be "that the claimant has

not established anything in excess of the amount the debtor admits is owed, not a request

for complete disallowance of the claim merely because of inadequate documentation,"

versus a situation in which "Debtors . . . [wrote] to a Creditor explaining that they

questioned specific charges, or that during the slide into bankruptcy they had not

reviewed or retained their monthly statements, and therefore they wanted the past twelve

months' credit card statements to verify the Creditor's calculation of principal, interest

and other charges," where an objection to the entire claim might be appropriate. *Id.* at

431.

### 4. This Court's Approach to Mortgage Claims

The Court concludes that in the mortgage context, the creditor may initially attach

only a summary of its claim, containing the debtor's name, account number, the

prepetition account balance, interest rate, and a breakdown of the interest charges,

finance charges and other fees that make up the balance of the debt.  If the creditor is an

assignee, it must also provide an affidavit attesting to the assignment of the note and

mortgage.  Upon request of the debtor, the creditor has an obligation to provide

additional documentation underlying its summary and affidavit (such as the original note

and mortgage, or a written assignment), within two weeks after dispatch or

communication of such a request, or the debtor can file an objection based on a lack of

adequate documentation.

With respect to the effect of the debtor's initially scheduling the claim as

undisputed, and amending its schedules to list the claim as "disputed," the Court agrees

with the reasoning in *In re Kincaid* that it must balance "the debtor's right to be able to

verify that the claimant is the owner [of the debt] and the claimant's right not to be

harassed with *pro forma* documentation objections that have no underlying basis . . . ."

*Kincaid*, 388 B.R. at 616 n.7.  The Court agrees that "amendments to bankruptcy

schedules are permitted 'as a matter of course' any time before a case is closed," and

therefore such admissions may be questionable.  But, as the court indicated in *In re*

*Heath*, 331 B.R. at 431, the Court cannot ignore that the account numbers listed for the

claim on Debtor's Schedule D and the Summary attached to Claim # 2 are almost

identical, as are the amounts of the claim.  While not going so far as to find that the

Debtor's amendment to the schedules listing the Chase Home Equity Line of Credit

claim as "disputed" "smacks of bad faith," as the court did in *In re Cluff*, 313 B.R. at

340, the Court assesses the lack of documentation "together with the objector's then-

existing knowledge base" just as the court did in *In re Porter,* 374 B.R. at 482, and will

not ignore the Debtor's scheduling of a strikingly similar claim to that asserted by Proof

of Claim # 2.[8]

---

[8]　　　The Objection to Claim # 2 was filed after the Debtor's request for Loss Mitigation was seemingly being ignored by Chase. The Debtor appears to acknowledge that there are two liens recorded against the Property, and even if Claim # 2 is expunged, the mortgagee's lien will ride-through the bankruptcy, as a secured creditor is not required to file a proof of claim.  *E.g.*, *In re Hogan*, 346 B.R. 715, 720 n.7 (Bankr. N.D. Tex. 2006) ("As a general rule, a secured creditor in a Chapter 13 case is not required to file a proof of claim but may choose to ignore the bankruptcy proceeding and look to its lien for satisfaction of the debt.") (internal citations omitted).  But if the secured creditor wants to receive payments under a confirmed plan, the creditor must file a proof of claim.  *Id.* (**"**Thus, even though a secured creditor might choose to 'ride through' a bankruptcy case by refusing to file a claim, [Fed. R. Bankr. R. 3021] appears to mandate that the creditor may receive distributions out of the plan *only if* it holds an allowed claim.  Thus, filing a proof of claim is a prerequisite to the claim's allowance.  In sum, if a creditor elects not to file a claim, then it also elects not to be paid under the plan.") (internal citations omitted) (emphasis in original). The Court's Opinion and Order sustaining the Objection and expunging Claim # 2 without prejudice should get Chase's attention, but assuming that Chase can establish standing, the best result may be for the parties to stipulate to the filing of an amended claim (with adequate documentation), agree to enter Loss Mitigation (with an appropriate order presented to the Court), and then negotiate in good faith whether a loan modification is appropriate in the circumstances.  The Court does not favor the use of a claim objection as a way to get a creditor's attention, particularly because of the burden the objection imposes on the parties and the Court.

C.          **Effect of a Claim Lacking Prima Facie Validity**

For the reasons explained below, the Court finds that Chase's failure to attach

documentation to its Claim # 2 and respond to the Debtor's information requests is fatal

to Claim #2.

Courts, also mostly in the credit card context, disagree whether, and under what

circumstances, the failure to attach sufficient documentation to a proof of claim can

result in disallowance of a claim on procedural grounds.  Bankruptcy Code § 502(b)

prescribes nine categories of claims which will be disallowed, including that "(1) such

claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law for a reason other than because such claim is contingent or

unmatured."  11 U.S.C. § 502(b).  Section 502(b) does not identify "insufficient

documentation" as a basis to disallow a claim.  Courts in this Circuit have sustained

"insufficient documentation objections" resulting in the disallowance of claims.  *See In

re Porter*, 374 B.R. at 480 ("under some circumstances lack of [documentation required

by Rule 3001(c)] followed by a creditor's failure to appear or otherwise respond to an

objection . . . made on the grounds of insufficient annexed documentation may result in a

disallowance of the claim on procedural (i.e., default) grounds"); *see also Cordier v.

Plains Commerce Bank (In re Cordier)*, Bankr. No. 08-20298 (ASD), Adv. Pro. No. 08-

2037, 2009 WL 890604, *2-3 (Bankr. D. Conn. 2009) (distinguishing the "enumerated

exceptions to allowance of a proof of claim" from a challenge to the validity or amount

of the proof of claim which would result in disallowance of the claim on procedural

grounds).  In *In re Porter*, the court explained that "in many cases . . . an Insufficient

Doc. Objection fairly can be read to object on the grounds that the proof of claim is

insufficient (when taken together with the objector's then-existing knowledge base) for

the objector to concede the validity of the claim asserted." *Porter*, 374 B.R. at 482

(citing *In re Kirkland,* 361 B.R. 199 (Bankr. D.N.M. 2007)).

On the other hand, at least one court has found that an objection based on

insufficient documentation is a valid basis for disallowing a claim as "unenforceable

against the debtor under applicable law" under 11 U.S.C. § 502(b)(1) because of a lack

of compliance with Rule 3001. *In re DePugh*, 409 B.R. at 137-38. Another court found

that failure to comply with Rule 3001(c) would not be sufficient to make a claim

"unenforceable against the debtor under applicable law," and courts sustaining objections

on such grounds "do not explain how they can disregard [that noncompliance with Rule

3001(c) is not one of the statutory grounds for disallowance under 11 U.S.C. § 502(b)].

The statute's provisions cannot be enlarged or reduced by the Rules." *In re Heath*, 331

B.R. at 426, 435. Still, as noted *supra*, the creditor's failure to provide information or

support its claim might come within Section 502(b)'s enumerated grounds for

disallowance because it possibly raises an "evidentiary basis to object to the unsupported

aspects of the claim, or even a basis for evidentiary sanctions," particularly where the

debtor questions specific charges, or could not verify the calculation of principal, interest

and other charges because the debtor no longer had its credit card statements, as opposed

to where the debtor disputes the amount of the proof of claim, but admits there is some

claim. *Id.* at 437.

This Court agrees with the rationale of Judge Weil in *Porter*, 374 B.R. 471, that in

certain circumstances claims can be disallowed for failure to support the claim with

sufficient evidence, even if this is not a specifically enumerated reason for disallowance

under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim.

### D.    The Creditor Has Failed to Meet Its Prima Facie Burden Here, and the Claim Objection is Sustained, Without Prejudice, Upon the Filing of An Amended Proof of Claim by the Proper Party

Here it is not clear whether the claim was assigned to Chase, or whether Chase was the original party on the mortgage and the note; the creditor merely attached a summary signed by a representative of an entity that has slightly different name than the creditor listed on the Debtor's schedules. *See Parrish*, 326 B.R. at 720-21. While the initial summary attached to the Claim contained the case number, the name of the Debtor, the last three digits of the "Loan Number," and a summary list of the principal, interest, and late charges, the Debtor requested additional information from the claimant in October and has received no documents as of the date of the hearing on the claim objection, including a copy of the note, mortgage or any written assignment. Chase did not provide an affidavit attesting to the assignment of the note and mortgage.

At the same time, it appears a lien exists on the Property, and the Debtor has scheduled some debt with a similar account number as that listed on the creditor's summary attached to the Claim. Accordingly, like the courts in *In re Parrish* and *In re Hayes*, the Court sustains the Objection, without prejudice to reconsideration under 11 U.S.C. § 502(j) upon the filing of an amended proof of claim by the proper party within 21 days of the date of the entry of this Order. If Chase holds the note and mortgage, it must affix documents to the proof of claim establishing that relationship. Alternatively, if Chase is not the holder, it must give the holder notice of this 21-day deadline and file a declaration with the Court that such notice has been given. The Debtor has 14 days after any amended proof of claim is filed to object.

25

### E.        Debtor's Counsel is Not Entitled to Attorney's Fees

The Debtor's attorney has only perfunctorily argued that he is entitled to recover attorney's fees for his successful objection to the claim.  While other courts have awarded attorney's fees to the debtor's counsel as sanctions, under 28 U.S.C. § 1927, FED. R. BANKR. P. 9011, FED. R. BANKR. P. 7054 and the inherent power of the court, where the debtor successfully objects to a proof of claim for insufficient documentation under FED. R. BANKR. P. 3001, the conduct of the creditors in those situations has been particularly egregious.  *See In re DePugh*, 409 B.R. at 129; *In re Roco Corp.*, 37 B.R. 770, 776 (Bankr. D.R.I. 1984).

In order to merit the award of sanctions under 28 U.S.C.§ 1927 and the inherent power of the court, the court must find bad faith.  *See In re Green,* 2010 WL 346090, at *3 (Bankr. S.D.N.Y. February 2, 2010) ("The same standard applies to both theories.") (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *In re Truong*, 2008 WL 1776227, at *5 ("There is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith.")).  Courts must find bad faith based on clear evidence.  *Revson v. Cinque & Cinque*, 221 F.3d 71, 79 (2d Cir. 2000) ("[T]o impose sanctions under either authority, the trial court must find *clear* evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.") (emphasis added).  In *DePugh*, the court noted that:

> Where a debtor is forced to incur attorneys' fees objecting to deficient proofs of claim and attending hearings for which the creditor's counsel is woefully unprepared, it is not only the debtor that bears these costs but also every other unsecured creditor, as every penny used to pay a debtor's attorney's priority claim for fees necessarily reduces the amount available to pay other

> creditors. Additionally, the practice of filing skeletal proofs of claim and requiring the debtor to object before producing documents that should have been produced to begin with could, in the aggregate, cost Chapter 13 debtors substantial sums that could be put to better use proposing and maintaining payments on a feasible plan of reorganization.

*In re DePugh* , 409 B.R. at 129.

Still, the *DePugh* court awarded sanctions because of "many compounded instances of misconduct," including that the creditor "did not bother to attach the exhibits attached to its Response to its original proofs of claim ; it neglected to review this Court's or the District Court's recently published opinions that were precisely on point with respect to the issues being addressed herein; it neglected to review this Court's Notice and Order before amending Proof of Claim 6; and it filed a Response to the Debtor's Objections that not only confuses the facts, but also ignores the applicable law in this District." *Id.* at 144. The creditor also, "in violation of Local Rule 11.2, sent an attorney with virtually no knowledge of the Debtor's case or [creditor]'s file to the hearing on the Objections." *Id.* Debtor's counsel does not allege similar conduct on the part of the creditor here.

Similarly, in *In re Roco Corp.*, the court noted that a request for attorney's fees, while in its discretion, and while possible under FED. R. BANKR. R. 7054 as costs in a claim objection situation, required "a showing of bad faith," and the power to award attorney's fees was "reserved for exceptional situations." *In re Roco Corp.*, 37 B.R. at 775. The court awarded attorney's fees in objecting to a proof of claim filed by a corporate insider, whose claims had previously been the subject of extensive litigation, because the proof of claim was "mainly for the purpose of taking yet another bite at an apple which [the insider] consumed long ago, and has served only to further delay the

27

distribution of assets to creditors and to reduce their recovery, to the extent of the cost of this most recent litigation." *Id.* The court looked "critically upon [principal]'s inequitable conduct and insider activities conducted during periods of time when he was able to exercise complete dominance and control over the corporation, factors which have resulted in the trustee's success in the litigation to date" in awarding attorney's fees. *Id.* at 772.

Here, the Debtor has not demonstrated equally egregious conduct on behalf of the creditor, or its attorneys (none have appeared), nor can the court find that the creditor's claims were entirely meritless and the party acted for improper purposes; the creditor has merely refused to come forward with evidence to meet its evidentiary burden under FED. R. BANKR. P. 3001 and demonstrate its standing to bring the claim. Accordingly, Debtor's request for attorney's fees is denied.

## CONCLUSION

For the reasons explained above, the Debtor's objection to Claim # 2 is **SUSTAINED** and the claim is **EXPUNGED**, without prejudice. The Debtor's request for attorney's fees is **DENIED**.

**IT IS SO ORDERED.**

DATED:        March 1, 2010
              New York, New York


              _____/s/Martin Glenn_____
                    MARTIN GLENN
              United States Bankruptcy Judge